Case 1:16-cv-00630-SAB   Document 18   Filed 02/16/17   Page 1 of 8

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BURRESS,<br><br>    Plaintiff,<br><br>    v.<br><br>S. SHEISHA, et al.,<br><br>    Defendants. | Case No.: 1:16-cv-00630-SAB (PC)<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT, WITHOUT FURTHER LEAVE TO AMEND, FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>[ECF No. 16] |

Plaintiff William Burress is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Pursuant to 28 U.S.C. § 636(c), Plaintiff consented to the jurisdiction of the United States Magistrate Judge on May 5, 2016.  Local Rule 302.

Currently before the Court is Plaintiff's second amended complaint, filed September 6, 2016.

## I.

## RELEVANT HISTORY

Plaintiff filed the instant action on April 27, 2016, in the United States Eastern District of California, Sacramento Division.  On May 4, 2016, the action was transferred to this Court.

On July 22, 2016, the Court issued an order striking Plaintiff's complaint for lack of signature pursuant to Local Rule 131 and Federal Rule of Civil Procedure 11(a).  (ECF No. 8.)

Plaintiff filed a first amended complaint on August 3, 2016.  (ECF No. 10.)  On August 9, 2016, the Court dismissed Plaintiff's amended complaint with leave to amend for failure to state a

1

cognizable claim for relief.  In this order, the Court found that the gravamen of Plaintiff's complaint related to a disagreement among himself and/or medical professionals as to the proper treatment for his keloids, which did not give rise to a constitutional violation for deliberate indifference under the Eighth Amendment.  (ECF No. 12.)

After Plaintiff received an extension of time, he filed a second amended complaint on September 6, 2016.  (ECF No. 16.)

## II.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556

U.S. at 678; Moss, 572 F.3d at 969.

## III.

## COMPLAINT ALLEGATIONS

Plaintiff suffers from a medical condition known as "keloids" an excessive growth of tissue to both of Plaintiff's ears.  Plaintiff previously had surgery to remove the keloids with ordered follow-up treatment.  The follow-up treatment never occurred, and a result the keloid tissue grew back.  Plaintiff submitted a medical health care form requesting to see his primary care provider, Dr. Hill due to the regrowth of the keloid and reoccurring pain.  Dr. Hill informed Plaintiff that the regrowth took place as a result of no follow-up treatment after the surgery.  Dr. Hill insisted that a second surgery would correct the problem but wanted an "outside specialist" recommendation to concur.

On May 6, 2015, the specialist agreed with Dr. Hill and recommended a second surgery with proper follow-up treatment to eliminate the keloid tissue regrowth.  In May 2015, Dr. Hill informed Plaintiff of the recommendation and informed Plaintiff the request would be submitted to the Medical Authorization Review (MAR) board for approval.

On June 9, 2015, the MAR committee denied the surgery procedure.  The MAR committee indicated that they felt the surgery procedure would be "cosmetic" and a second surgery would be futile and not correct the problem.  Plaintiff again consulted with Dr. Hill who advised Plaintiff of his right to appeal the MAR committee decision.

In relation to the first level review, Plaintiff was interviewed by Defendant Dr. K. El Said.  The appeal was partially granted on March 25, 2015, at the first level of review by Defendant Dr. U. Baniga in that Plaintiff was referred for a dermatology consultation which at that time was pending.  (ECF No. 1, Ex. B.)

Plaintiff's appeal was denied at the second level of review by Defendant S. Sheisha.  (ECF No. 1, Ex. C.)

Thereafter, Plaintiff appeal was denied at the third and final level of review by Defendant J. Lewis.  (ECF No. 1, Ex. D.)

///

///

## IV.

## DISCUSSION

### A.     Incorporation by Reference

Under the doctrine of incorporation by reference, a Court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (internal quotation marks omitted).

As Plaintiff has submitted the inmate appeals and responses thereto to his original complaint, and makes repeated reference to the documents in his second amended complaint, the Court will consider the inmate appeals and responses thereto under the doctrine of incorporation by reference. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (in assessing Rule 12(b)(6) motion, court may consider documents properly submitted with complaint without need to convert Rule 12(b)(6) motion into motion for summary judgment); abrogated on other grounds as explained in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002); Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (even if document not physically attached to complaint, court may still consider document in assessing Rule 12(b)(6) motion if complaint refers to document, document is central to plaintiff's claim, and no part questions authenticity thereof). Although these cases dealt with a Rule 12(b)(6) motion, because the review under both Rule 12(b)(6) and 28 U.S.C. § 1915A are limited to the confines of the complaint, such reasoning applies with equal force here.

### B.     Deliberate Indifference to Serious Medical Need

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing

Jett, 439 F.3d at 1096).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference."  Snow v. McDaniel, 681 at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

In denying the appeal at the third and final level of review, it was specifically stated, in pertinent part, as follows:

> Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff.  These records indicate:
> ● You have received ongoing Primary Care Provider (PCP) and registered nurse (RN) monitoring, evaluation, and treatment of October 12, 2015, for your health care condition.
>
> ● On July 15, 2015, you had a PCP follow up appointment.  It was determined that your keloids are not interfering with your ability to complete your daily activities of living; the condition was noted as more cosmetic than functional.
>
> ● On August 31, 2015 you were seen by your PCP for pain concerns.  You were advised not to lie on your ears and alternatives for over-the-counter medications were discussed.  The plan of care indicated continued steroid injections at your request.
>
> ● On August 31, September 15, and October 12, 2015, you received steroid injections for treatment of pain related to your keloids.
>
> ● According to your medication profile you have an active prescription for the medication hydrocortisone for your keloids.
>
> Licensed clinical staff determined your care related to your appeal issues was adequate as you received medical treatment to address your keloid concerns.  You have been prescribed

> medication for treatment of your keloids and you have been provided steroid injections for pain control.  As indicated in the institution responses, the medical necessity for keloid surgery is not validated as determined by the Medical Authorization Review process.  Keloid development is related to the genetic makeup of the person and is an abnormal wound healing response.  It is indicated that your keloids will occur whenever you are subjected to skin injury.  Surgery has often resulted in new and bigger keloids at the site of the original keloid and is not a guarantee that a keloid will not re-grow.  You have other keloids, and would not benefit from surgery, as keloids are likely to recur if attempted excision is done, and it is possible the keloid will be larger if it recurs.  Based on this, you do not meet Utilization Management criteria for surgical removal of your keloids.  Title 15 requires that only medical therapies supported by outcome data as effective medical care may be provided to patients in CDCR.
>
> CDCR utilizes InterQual Care criteria to evaluate the necessity of health care services.  InterQual criteria are internationally recognized guidelines that support the delivery of quality health care as well as reviewer consistency.  In addition to InterQual criteria, review of the English language, peer reviewed, evidence based medical literature may be utilized in the decision making process.  Utilization management decisions are based on the appropriateness of health care services.

(ECF No. 1, Ex. D.)

The Court is not required to accept as true allegations that contradict exhibits attached to the complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  Even assuming that Plaintiff's keloids presents an objectively serious medical condition, Plaintiff's claim that he is being improperly denied a second surgery procedure for his keloids is a classic example of a disagreement with medical treatment, which is not sufficient to give rise to a constitutional claim for deliberate indifference.

It is clear that Plaintiff was evaluated by Dr. Hill, who referred Plaintiff to an outside specialist for evaluation of his keloids.  While the dermatologist determined surgery could be performed, prison medical officials determined such surgery would not be beneficial for Plaintiff given his medical history.  Indeed, the recommendation by the outside medical provider did not set forth any of Plaintiff's medical history and/or set forth any guarantee as to the effectiveness of such surgery in treating Plaintiff's keloid condition.  (ECF No. 1, Ex. F.)  Plaintiff's medical record noted and Plaintiff does not dispute that he was provided steroid injections for the pain and had an active prescription for hydrocortisone to treat his keloids.  Plaintiff's allegations in the second amended complaint

1  demonstrate that he was treated by physicians within the prison system and evaluated by a provider
2  outside the prison system who gave differing opinions on whether to treat and how to treat Plaintiff's
3  keloids.
4       Contrary to Plaintiff's claim that Dr. Hill indicated that the recurrence of the keloids was due
5  to the lack of follow-up treatment, such statement appears only in the medical report outlining
6  Plaintiff's subjective description of his complaints.  (ECF No. 1, Ex. E.)  Furthermore, the response by
7  J. Lewis, Deputy Director of California Correctional Health Care Services contradicts that the
8  recurrence of the keloids was due solely to the lack of follow-up treatment.  (ECF No. 1, Ex. D.)  J.
9  Lewis specifically noted that Plaintiff's "keloids will occur whenever [he is] subject to ski injury.
10 Surgery has often resulted in new and bigger keloids at the site of the original keloid and is not a
11 guarantee that a keloid will not re-grow.  You have other keloids, and would not benefit from surgery,
12 as keloids are likely to recur if attempted excision is one, and it is possible the keloid will be larger if it
13 recurs."  (Id.)  In any event, Plaintiff provides no facts as when, where, and by whom he had prior
14 keloid surgery and who specifically failed to provide such follow-up treatment.  Plaintiff merely
15 references in conclusory terms that he was not provided follow-up treatment, and the gravamen of
16 Plaintiff's complaint relates solely to the denial for a second surgery to treat his keloids.  There are no
17 factual allegations to demonstrate that any Defendant was aware that Plaintiff was at a risk of
18 redeveloping keloids and failed to act.  In fact, the medical evidence relied upon indicates that keloids
19 are difficult to treat and likely to recur if they are removed.  Based on Plaintiff's allegations, this case
20 involves only a difference of opinion between medical providers regarding treatment for his keloids
21 which does not amount to deliberate indifference.  Sanchez v. Vild, 891 F.2d at 242.  Plaintiff's
22 disagreement with the determinations of the prison medical opinions is insufficient to state a
23 cognizable claim.  The Court finds that Plaintiff's claim is unable to be cured by amendment and shall
24 be dismissed, with prejudice.
25 ///
26 ///
27 ///
28      **V.**

**CONCLUSION AND ORDER**

Plaintiff was previously notified of the applicable legal standards and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff's first amended complaint is largely identical to the original complaint.  Based upon the allegations in Plaintiff's original and first amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support a claim for deliberate indifference to serious medical needs, and further amendment would be futile.  See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may not deny leave to amend when amendment would be futile.")  Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th. Cir. 2000); Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Accordingly, it is HEREBY ORDERED that:

1. This action be dismissed for failure to state a claim upon which relief could be granted; and

2. The Clerk of Court is directed to terminate this action.

IT IS SO ORDERED.

Dated:   **February 16, 2017**

UNITED STATES MAGISTRATE JUDGE