# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BURRESS,<br><br>    Plaintiff,<br><br>    v.<br><br>S. SHEISHA, et al.,<br><br>    Defendants. | Case No.: 1:16-cv-00630-SAB (PC)<br><br>ORDER DIRECTING CLERK OF THE COURT TO ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF THE ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>[ECF Nos. 16, 24, 26] |

Plaintiff William Burress is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff initiated this action on April 27, 2016, by filing the initial complaint in the Sacramento Division of the United States District Court for the Eastern District of California. (ECF No. 1.) On May 4, 2016, the matter was transferred to the Fresno Division. (ECF No. 5.) On July 22, 2016, Plaintiff's complaint was stricken for lack of a signature. (ECF No. 8.)

Plaintiff filed a first amended complaint on August 3, 2016. (ECF No. 10.) On August 9, 2016, the Court dismissed Plaintiff's first amended complaint with leave to amend for failure to state a cognizable claim for relief. (ECF No. 12.)

On September 6, 2016, Plaintiff filed a second amended complaint. (ECF No. 16.) On February 16, 2017, the undersigned dismissed the action for failure to state a cognizable claim for

1

relief and judgment was entered. (ECF Nos. 18, 19.) Plaintiff filed a notice of appeal on March 20, 2017. (ECF No. 20.)

On February 22, 2018, the Ninth Circuit Court of Appeals vacated and remanded the action to this Court. (ECF No. 24.) Specifically, the Ninth Circuit found that because all the parties, including unserved defendants, had not consented to proceed before a United States Magistrate Judge, the order was vacated and the case was remanded for further proceedings pursuant to Williams v King, 875 F.3d 500, 503-04 (9th Cir. 2017). (Id.) The Ninth Circuit's mandate was issued on July 13, 2018, ordering that the February 22, 2018 judgment takes effect as of that date. (ECF No. 26.)

# I.

# SCREENING REQUIREMENT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The pleadings of pro se litigants are construed liberally and are afforded the benefit of any doubt. Blaisdell v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989), and "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). Also, while a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the

misconduct alleged, Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff suffers from a medical condition known as "keloids" an excessive growth of tissue to both of Plaintiff's ears. Plaintiff previously had surgery to remove the keloids with ordered follow-up treatment. The follow-up treatment never occurred, and a result the keloid tissue grew back. Plaintiff submitted a medical health care form requesting to see his primary care provider, Dr. Hill due to the regrowth of the keloid and reoccurring pain. Dr. Hill informed Plaintiff that the regrowth took place as a result of no follow-up treatment after the surgery. Dr. Hill insisted that a second surgery would correct the problem but wanted an "outside specialist" recommendation to concur.

On May 6, 2015, the specialist agreed with Dr. Hill and recommended a second surgery with proper follow-up treatment to eliminate the keloid tissue regrowth. In May 2015, Dr. Hill informed Plaintiff of the recommendation and informed Plaintiff the request would be submitted to the Medical Authorization Review (MAR) board for approval.

On June 9, 2015, the MAR committee denied the surgery procedure. The MAR committee indicated that they felt the surgery procedure would be "cosmetic" and a second surgery would be futile and not correct the problem. Plaintiff again consulted with Dr. Hill who advised Plaintiff of his right to appeal the MAR committee decision.

In relation to the first level review, Plaintiff was interviewed by Defendant Dr. K. El Said. The appeal was partially granted on March 25, 2015, at the first level of review by Defendant Dr. U. Baniga in that Plaintiff was referred for a dermatology consultation which at that time was pending. (ECF No. 1, Ex. B.)

Plaintiff's appeal was denied at the second level of review by Defendant S. Sheisha. (ECF No. 1, Ex. C.) Thereafter, Plaintiff appeal was denied at the third and final level of review by Defendant J. Lewis. (ECF No. 1, Ex. D.)

# III.

# DISCUSSION

### A. Incorporation by Reference

Under the doctrine of incorporation by reference, a Court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (internal quotation marks omitted).

As Plaintiff has submitted the inmate appeals and responses thereto to his original complaint, and makes repeated reference to the documents in his second amended complaint, the Court will consider the inmate appeals and responses thereto under the doctrine of incorporation by reference. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (in assessing Rule 12(b)(6) motion, court may consider documents properly submitted with complaint without need to convert Rule 12(b)(6) motion into motion for summary judgment); abrogated on other grounds as explained in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002); Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (even if document not physically attached to complaint, court may still consider document in assessing Rule 12(b)(6) motion if complaint refers to document, document is central to plaintiff's claim, and no part questions authenticity thereof). Although these cases dealt with a Rule 12(b)(6) motion, because the review under both Rule 12(b)(6) and 28 U.S.C. § 1915A are limited to the confines of the complaint, such reasoning applies with equal force here.

### B. Deliberate Indifference to Serious Medical Need

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing

Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

In denying the appeal at the third and final level of review, it was specifically stated, in pertinent part, as follows:

> Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff. These records indicate:
>
> ● You have received ongoing Primary Care Provider (PCP) and registered nurse (RN) monitoring, evaluation, and treatment of October 12, 2015, for your health care condition.
>
> ● On July 15, 2015, you had a PCP follow up appointment. It was determined that your keloids are not interfering with your ability to complete your daily activities of living; the condition was noted as more cosmetic than functional.
>
> ● On August 31, 2015 you were seen by your PCP for pain concerns. You were advised not to lie on your ears and alternatives for over-the-counter medications were discussed. The plan of care indicated continued steroid injections at your request.
>
> ● On August 31, September 15, and October 12, 2015, you received steroid injections for treatment of pain related to your keloids.
>
> ● According to your medication profile you have an active prescription for the medication hydrocortisone for your keloids.

5

> Licensed clinical staff determined your care related to your appeal issues was adequate as you received medical treatment to address your keloid concerns. You have been prescribed medication for treatment of your keloids and you have been provided steroid injections for pain control. As indicated in the institution responses, the medical necessity for keloid surgery is not validated as determined by the Medical Authorization Review process. Keloid development is related to the genetic makeup of the person and is an abnormal wound healing response. It is indicated that your keloids will occur whenever you are subjected to skin injury. Surgery has often resulted in new and bigger keloids at the site of the original keloid and is not a guarantee that a keloid will not re-grow. You have other keloids, and would not benefit from surgery, as keloids are likely to recur if attempted excision is done, and it is possible the keloid will be larger if it recurs. Based on this, you do not meet Utilization Management criteria for surgical removal of your keloids. Title 15 requires that only medical therapies supported by outcome data as effective medical care may be provided to patients in CDCR.
>
> CDCR utilizes InterQual Care criteria to evaluate the necessity of health care services. InterQual criteria are internationally recognized guidelines that support the delivery of quality health care as well as reviewer consistency. In addition to InterQual criteria, review of the English language, peer reviewed, evidence based medical literature may be utilized in the decision making process. Utilization management decisions are based on the appropriateness of health care services.

(ECF No. 1, Ex. D.)

The Court is not required to accept as true allegations that contradict exhibits attached to the complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). Even assuming that Plaintiff's keloids presents an objectively serious medical condition, Plaintiff's claim that he is being improperly denied a second surgery procedure for his keloids is a classic example of a disagreement with medical treatment, which is not sufficient to give rise to a constitutional claim for deliberate indifference.

It is clear that Plaintiff was evaluated by Dr. Hill, who referred Plaintiff to an outside specialist for evaluation of his keloids. While the dermatologist determined surgery could be performed, prison medical officials determined such surgery would not be beneficial for Plaintiff given his medical history. Indeed, the recommendation by the outside medical provider did not set forth any of Plaintiff's medical history and/or set forth any guarantee as to the effectiveness of such surgery in treating Plaintiff's keloid condition. (ECF No. 1, Ex. F.) Plaintiff's medical record noted and Plaintiff does not dispute that he was provided steroid injections for the pain and had an active prescription for

6

hydrocortisone to treat his keloids. Plaintiff's allegations in the second amended complaint demonstrate that he was treated by physicians within the prison system and evaluated by a provider outside the prison system who gave differing opinions on whether to treat and how to treat Plaintiff's keloids.

Contrary to Plaintiff's claim that Dr. Hill indicated that the recurrence of the keloids was due to the lack of follow-up treatment, such statement appears only in the medical report outlining Plaintiff's subjective description of his complaints. (ECF No. 1, Ex. E.) Furthermore, the response by J. Lewis, Deputy Director of California Correctional Health Care Services contradicts that the recurrence of the keloids was due solely to the lack of follow-up treatment. (ECF No. 1, Ex. D.) J. Lewis specifically noted as follows:

> [Plaintiff's] keloids will occur whenever [he is] subject to ski injury. Surgery has often resulted in new and bigger keloids at the site of the original keloid and is not a guarantee that a keloid will not re-grow. You have other keloids, and would not benefit from surgery, as keloids are likely to recur if attempted excision is one, and it is possible the keloid will be larger if it recurs.

(Id.)

In any event, Plaintiff provides no facts as when, where, and by whom he had prior keloid surgery and who specifically failed to provide such follow-up treatment. Plaintiff merely references in conclusory terms that he was not provided follow-up treatment, and the gravamen of Plaintiff's complaint relates solely to the denial for a second surgery to treat his keloids. There are no factual allegations to demonstrate that any Defendant was aware that Plaintiff was at a risk of redeveloping keloids and failed to act. In fact, the medical evidence relied upon indicates that keloids are difficult to treat and likely to recur if they are removed.

Based on Plaintiff's allegations, this case involves only a difference of opinion between medical providers regarding treatment for his keloids which does not amount to deliberate indifference. Sanchez v. Vild, 891 F.2d at 242. Plaintiff's disagreement with the determinations of the prison medical opinions is insufficient to state a cognizable claim. Plaintiff's claim is unable to be cured by amendment and therefore it should be dismissed, with prejudice.

///

7

# V.

# CONCLUSION AND RECOMMENDATION

The Clerk of the Court is HEREBY DIRECTED to randomly assign a district judge to this action.

Further, for the reasons explained above, IT IS HEREBY RECOMMENDED that this action be dismissed for Plaintiff's failure to state a claim for which relief may be granted.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**July 19, 2018**__

UNITED STATES MAGISTRATE JUDGE